UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-3450 |
| | § | |
| CARSON EINKAUF, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Malibu Media, LLC's (d/b/a "X-Art.com") ("Malibu Media") motion for default judgment. Dkt. 22. Having considered the amended complaint, motion, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

This case arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act"). Dkt. 13 at 1. Malibu Media is a California corporation engaged in the production and distribution of adult erotic films through its website "X-Art.com." *See id.* at 2; Dkts. 13-1, 13-2. Malibu Media brings this copyright infringement action against defendant Carson Einkauf. Malibu Media alleges that it owns copyrights to nineteen films (the "Copyrighted Works") and that Einkauf used computer software known as BitTorrent to illegally download, copy, and distribute the films. *Id.* at 4.

## A. BitTorrent

Malibu Media alleges that the copyright infringement occurred through the use of BitTorrent. According to Malibu Media, BitTorrent is one of the most common computer programs that allows people to share files over the Internet. *Id.* at 3. BitTorrent, a peer-to-peer file sharing system, is primarily used for distributing large amounts of data, including digital movie files. *Id.* Malibu Media claims that BitTorrent's defining feature is that it allows files to be transferred among multiple computers simultaneously without creating a heavy load on any individual source computer. *Id.*

Malibu Media explains that, in order to distribute a large file, the BitTorrent protocol breaks a file into smaller pieces and assigns each piece a "hash," a unique alphanumeric identifier, similar to an electronic fingerprint. *Id*. Every digital file has one hash value correlating to it. *Id.* The BitTorrent protocol uses the hash values to ensure each piece is properly routed among BitTorrent users as they engage in file sharing. *Id.* The entire digital media file also has a hash value that acts as a digital fingerprint to identify the media file or movie. *Id.* at 3–4. When a software user completes downloading all the pieces of a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* Once a BitTorrent file has been created, other BitTorrent users may access and download the file. *Id.*

## B. Alleged Copyright Infringement

Malibu Media hired the investigator, IPP International UG ("IPP"), to identify individuals who use BitTorrent to illegally download and distribute content. *Id.* at 4. Malibu Media claims IPP established a direct Transmission Control Protocol/Internet Protocol ("TCP/IP") connection with the assigned IP address of 98.198.77.193, belonging to Einkauf. *Id.* at 4–5. IPP states that it

downloaded a full copy of each file hash from the BitTorrent File Distribution Network and confirmed that the file hash matched files containing Malibu Media's Copyrighted Works. *Id.* at 4. IPP claims its investigation revealed that a user at the IP address 98.198.77.193 had used BitTorrent to download, copy, and distribute the Copyrighted Works without authorization. *Id.*

**C.     Procedural History**

On September 26, 2018, Malibu Media filed a complaint against an unnamed individual who allegedly used BitTorrent to copy and distribute the Copyrighted Works without Malibu Media's consent, thereby infringing on its copyright. Dkt. 1. The original complaint alleged that defendant John Doe, a subscriber with an IP address of 98.198.77.193, infringed on Malibu Media's registered copyrights using BitTorrent. *Id.* After filing the complaint, Malibu Media moved for leave to serve a third-party subpoena on John Doe's Internet Service Provider, commanding it to provide the subscriber's name and contact information. Dkt. 6. The court granted the motion, after which Malibu Media filed an amended complaint naming Einkauf as the infringer. Dkt. 13. Malibu Media properly served Einkauf by means of posting at his last known address after this court gave Malibu Media leave to serve Einkauf by alternative service. Dkts. 19, 21. On May 28, 2018, Malibu Media filed a motion for default judgment against Einkauf, which it served by certified mail, return receipt requested. Dkt. 22. Malibu Media's attorney provides a sworn declaration stating that Einkauf is not a minor, incompetent, or in active military service. Dkt. 22-3 (Beik Dec.).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule

55(b)(2), a party may apply for the court to enter a default judgment, and the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Rule 4 of the Federal Rules of Civil Procedure requires the plaintiff to serve a copy of the summons and complaint on the defendant. Fed. R. Civ. P. 4(c)(1). Under Local Rule 5.5, a motion for default judgment must be served upon the defendant via certified mail, return receipt requested. S.D. Tex. L.R. 5.5.

A default judgment is a "drastic remedy, not favored by the Federal Rules[,] and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver." *Id.*

Einkauf has failed to plead or otherwise defend against this lawsuit. Malibu Media properly served Einkauf with this lawsuit under the Federal Rules and with the motion for default judgment under the Local Rules. Dkts. 21, 22; *see* Tex. L.R. 5.5. Given Einkauf's failure to answer the complaint in a timely manner, the court: (1) has the authority to enter default against Einkauf, (2) accept all well-pleaded facts in Malibu Media's complaint as true, and (3) award the relief sought by Malibu Media in this action. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

**III. ANALYSIS**

To receive a default judgment, a plaintiff must state a plausible claim for relief. *Id.* Malibu Media argues that Einkauf committed direct copyright infringement. Copyright infringement requires two elements to be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282 (1991).

**A. Ownership of a Valid Copyright**

First, Malibu Media alleges that it is the registered owner of the nineteen Copyrighted Works listed in Exhibit B to its amended complaint. Dkt. 13-2. Exhibit B provides an overview of the Copyrighted Works, including a hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office. Dkt. 13 at 4; Dkt. 13-2. Because Malibu Media provides registration numbers for its nineteen Copyrighted Works, the court finds that Malibu Media has demonstrated ownership of a valid copyright of the nineteen Copyrighted Works.

**B. Direct Copyright Infringement**

The second element of a copyright infringement claim requires proof of unauthorized copying of the original work. *Peel & Co. v. The Rug Market*, 238 F.3d 391, 395 (5th Cir. 2001). "Copyright infringement actions . . . ordinarily require no showing of intent to infringe. Instead, knowledge and intent are relevant in regard to damages." *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir. 2000).

Malibu Media claims that Einkauf used "the BitTorrent protocol to illegally download, reproduce, distribute, perform[,] and display" Malibu Media's copyrighted audiovisual works. Dkt. 22-1 at 8. Malibu Media alleges that its investigators established a direct TCP/IP connection

5

with Einkauf's IP address and downloaded one or more pieces of the digital media files identified by the file hashes in Exhibit A. *Id.* (citing Dkt. 13-1 (Exhibit A)). Each file hash listed in Exhibit A correlates to a copyrighted film in Exhibit B. *Id.*; *compare* Dkt. 22-2, *with* Dkt 13-1. Each digital media file listed in Exhibit A was allegedly verified to be a copy identical or similar to Malibu Media's corresponding original work. *Id.* Malibu Media claims that Einkauf copied and distributed the original works listed in Exhibit B without Malibu Media's authorization, thereby violating Malibu Media's exclusive copyrights. *Id.* at 9.

Downloading and distributing audiovisual works without authorization through peer-to-peer networks such as BitTorrent is a "distribution" prohibited by the Copyright Act. *See Atl. Recording Corp. v. Anderson*, No. H–06–3578, 2008 WL 2316551, at *8 (S.D. Tex. Mar. 12, 2008) (Gilmore, J.) (holding that making copyrighted works available for download through a peer-to-peer network constituted a violation). Using an online file-sharing system contemplates "further distribution" and therefore satisfies the second element of a copyright infringement claim. *Id.* Malibu Media argues that Einkauf's unauthorized use of BitTorrent violated the Copyright Act. Dkt. 22-1 at 7–8. Furthermore, Einkauf's IP address was documented distributing multiple pieces of a Malibu Media copyrighted movie. *Id.* at 8–9. Because Malibu Media pled enough facts, when taken as true, to support the allegation of unauthorized copying and distribution of its original work, the court finds that Malibu Media has satisfied the second element of copyright infringement.

**C.   Default Judgment**

Although a default judgment is a "drastic remedy, not favored by the Federal Rules[,] and resorted to by courts only in extreme situations," Einkauf failed to respond to Malibu Media's

complaint. *Sun Bank of Ocala*, 874 F.2d at 276. The court finds that Malibu Media made a sufficient showing with respect to the two elements of copyright infringement for nineteen of the Copyrighted Works. The court therefore GRANTS Malibu Media's motion and ENTERS default judgment against Einkauf for nineteen of the Copyrighted Works.

## IV. DAMAGES

In its complaint, Malibu Media requests that the court issue an injunction against Einkauf, and requests relief in the form of statutory damages and costs.. Dkt. 22-1 at 14–20. The court will address each of these requests for relief in turn.

### A.     Injunctive Relief

Malibu Media requests the court to enter an injunction against Einkauf as proposed in its complaint. *Id.* Specifically, Malibu Media seeks an order enjoining Einkauf and all other persons who are in active concert or participation with Einkauf from continuing to infringe on Malibu Media's copyrighted works. *Id.* Further, Malibu Media seeks a court order that Einkauf delete and permanently remove all infringing copies of Malibu Media's works on Einkauf's computer. *Id.*

Under section 502(a), a court may grant a permanent injunction on terms it finds reasonable to prevent or restrain copyright infringement. 17 U.S.C. § 502(a). For a permanent injunction, a party must demonstrate: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

In the present case, Malibu Media has succeeded on the merits against Einkauf. Malibu Media also has no adequate remedy at law because its injury cannot be fully compensated or

measured in a dollar amount because the extent of distribution cannot be measured. *Atl. Recording Corp.*, 2008 WL 2316551, at *10 (Gilmore, J.). Without enjoining Einkauf from further infringing on Malibu Media's copyrighted content, Malibu Media would remain vulnerable to continued infringement. The injunction does not burden Einkauf, as he is merely required to comply with the law, and the public interest is served by upholding Malibu Media's copyright protections.

The court finds that Malibu Media has shown it is entitled to injunctive relief based on Einkauf's alleged violation of federal copyright law. Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by Malibu Media, rather than to enjoin all possible breaches of the law. Fed. R. Civ. P. 65(d); *see Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 587 (5th Cir. 2013). The court has reviewed the injunction Malibu Media proposes and finds that it is not over-broad and merely enjoins Einkauf and those in active concert with Einkauf from engaging in further offending conduct. The court GRANTS Malibu Media's request for an injunction.

**B.     Statutory Damages**

Malibu Media is seeking statutory damages as outlined in 17 U.S.C. § 504. A copyright owner may elect to recover statutory damages for all infringements "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). A finding of willful infringement may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Malibu Media requests an award of $28,500 in statutory damages ($1,500 per work). Dkt. 22-1 at 14, 19. Malibu Media argues that the requested amount is reasonable because Einkauf aided other BitTorrent users by distributing the copyrighted material. *Id.* at 14. Malibu Media

further alleges that the actual damages due to lost subscriptions relate to the thousands of infringers that have access to the copyrighted material. *Id.* However, Malibu Media has provided nothing to justify awarding an amount that is both twice the minimum and twice what it has received and requested in previous cases—which have shared near-identical pleadings, facts, and memoranda—in this court and others in the Southern District. *See Malibu Media, LLC v. Escobar*, No. H-18-1042, 2019 WL 1003391, at *4 (S.D. Tex. Feb. 28, 2019) (Miller, J.) (awarding $750 per Copyrighted Work, totaling $14,250 for nineteen Copyrighted Works); *Malibu Media, LLC v. Gonzales*, No. H-16-2406, 2017 WL 2985641, at *5 (S.D. Tex. July 13, 2017) (Miller, J.) (awarding $750 per Copyrighted Work); *see also Malibu Media, LLC v. Tran*, No 4:16-cv-2412, slip op. at 2–3 (S.D. Tex. Feb. 2, 2017) (Gilmore, J.) (same). As such, the court finds that $750 per Copyrighted Work is reasonable and consistent with this court's precedent. Therefore, the court GRANTS IN PART and DENIES IN PART Malibu Media's request for statutory damages. Malibu Media's request for $1,500 per Copyrighted Work is DENIED. Malibu Media is awarded $750 per Copyrighted Work, which equates to $14,250.

**C.    Costs**

In any civil action under this title, the court in its discretion may allow the recovery of full costs and award reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505 (2012). To collect costs, parties must maintain their own record of taxable costs, and an application for costs shall be made by filing a bill of costs within 14 days of the entry of a final judgment. S.D. Tex. L.R. 54.2.

Here Malibu Media only seeks to recover its costs of court. Dkt. 22-1 at 19; *see* Dkt. 22-3 (Beik Dec.). The court GRANTS Malibu Media's request for costs of court, which it shall pursue in accordance with S.D. Tex. L.R. 54.2.

**D.     Interest on the Judgment**

Interest is allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961 (2000). Malibu Media is entitled to post-judgment interest. *Granville v. Suckafree Records, Inc.*, No. H-03-3002, 2006 WL 2520909, at *5 (S.D. Tex. June 28, 2006) (Werlein, J.). Malibu Media is entitled to recover damages against Einkauf as detailed above, plus post-judgment interest at the rate of 1.97% per annum in accordance with 28 U.S.C. § 1961(a).

## V. CONCLUSION

For the foregoing reasons, the court GRANTS Malibu Media's motion for default judgment. The court GRANTS IN PART AND DENIES IN PART the request for damages.

It is ORDERED that judgment by default be entered in favor of Malibu Media against Einkauf as follows;

1. Statutory damages in the amount of $14,250;

2. Post-judgment interest at the rate of 1.97% per annum from entry of judgment until the judgment is paid in full; and

3. All costs of court as provided by law.

The court also ENJOINS Einkauf as follows:

1. Einkauf is enjoined from directly, contributorily, or indirectly infringing Malibu Media's rights under federal or state law in the Copyrighted Works, including, without limitation, by using the internet, BitTorrent, or any other online media distribution system to reproduce (e.g., download)

or distribute the Copyrighted Works, or to make the Copyrighted Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Malibu Media; and

2. Einkauf is ordered to destroy all copies of Malibu Media's Copyrighted Works that Einkauf has downloaded onto any computer, hard drive, or server without Malibu Media's authorization, and shall destroy all copies of the Copyrighted Works transferred onto any physical medium or device in Einkauf's possession, custody, or control.

Signed at Houston, Texas on July 16, 2019.

_____
Gray H. Miller
Senior United States District Judge